## General Sessions—New York County.

### May, 1886.

### PEOPLE v. STOTT.

#### ABDUCTION.

Upon a trial for the abduction of a female under sixteen years of age, if the abducted female was under the age of sixteen at the time of the commission of the offense, it is immaterial whether or not the defendant had at that time knowledge that she was under such age.

Upon such a trial it is immaterial, except as bearing on the question of credibility of the abducted female as a witness, whether she was or was not, prior to the commission of the offense, a person of chaste character.

If the female be taken for the purpose of sexual intercourse by defendant, it is immaterial whether or not defendant had such intercourse with her.

It is not necessary that the corroboration of the abducted female's testimony should be by positive and direct evidence. Proof in addition to the evidence of the abducted female, of circumstances in corroboration, legitimately tending to establish the existence of the material facts is sufficient.

The testimony of a witness who has wilfully and corruptly testified falsely, as to any material fact, may be disregarded by the jury.

Reasonable doubt is such a doubt as honest, conscientious, pains-taking men may entertain upon a state of facts presented to them.

Evidence of good character, effect of considered by the court

TRIAL of defendant, John C. Stott, for abduction, before SMYTH, Recorder, and a jury.

The prisoner was indicted for abduction under Penal Code, section 282, as amended by Laws 1886, chapter 31, in that he did, on April 13, 1886, at the city of New York, feloniously take, receive, harbor and use one Hulda Wissler, who was then and there a female under the age of sixteen years, to wit, of the age of fourteen years, for the purpose of sexual intercourse, he, the said John C. Stott, not being then and there the husband of her, the said Hulda Wissler, against the form of the statute in such cases made and provided, and against the peace of the people of the State of New York and their dignity.

The facts appear in the charge of the court.

*Randolph B. Martine*, district attorney (*James Fitzgerald* and *Elbridge T. Gerry*, assistants), for the people.

*Wm. F. Howe*, for the prisoner.

The Recorder charged the jury as follows:

GENTLEMEN OF THE JURY—I ask your attention to the statute under which this indictment is framed. The statute provides as follows (Laws 1886, chapter 31):

Sec. 282. "A person who, 1. Takes, receives, employs, harbors or uses, or causes or procures to be taken, received, employed, harbored or used, a female under the age of sixteen years, for the purpose of prostitution; or, not being her husband, for the purpose of sexual intercourse, or without the consent of her father, mother, guardian or other person having legal charge of her person, for the purpose of marriage; or,

"2. Inveigles or entices an unmarried female of previous chaste character into a house of ill fame, or of assignation, or elsewhere, for the purpose of prostitution or sexual intercourse; or,

"3. Takes or detains a female unlawfully against her will, with the intent to compel her by force, menace or duress, to marry him, or to marry any other person, or to be defiled; or,

"4. Being parent, guardian or other person having legal charge of the person of a female under the age of sixteen years, consents to her taking or detaining by any person for the purpose of prostitution or sexual intercourse,

"Is guilty of abduction, and punishable by imprisonment for not more than five years, or by a fine of not more than one thousand dollars, or by both."

The indictment charges that this defendant, on the 13th day of April last, did take, receive, harbor and use a female under the age of sixteen years, for the purpose of sexual intercourse, he not then being the husband of said female. That is the charge, briefly stated.

Although, gentlemen, there is a great deal of evidence in this case, and a considerable length of time has been taken up by it—I do not say improperly—the questions involved are very

few, in my judgment, and easily passed upon by gentlemen of intelligence who have heard the evidence.

It appears that this girl was fourteen years of age on the 17th day of February last. You have the testimony of the mother upon that point, which is entirely uncontradicted. In addition to that, you have a right, under a statute which was passed in 1884, to take into consideration, in determining the age of this girl at the time ·this offense is alleged to have been committed, her appearance here upon the witness stand. The statute provides (*Penal Code*, § 19), "Whenever, in any legal proceeding, it becomes necessary to determine the age of a child, the child may be produced for personal inspection, to enable the magistrate, court or jury to determine the age thereby; and the court or magistrate may direct an examination by one or more physicians, whose opinion shall also be competent evidence upon the question of the age." You have had this girl before you, and you have the right to determine, in connection with her mother's testimony, from personal inspection, what her age was on the 13th day of April last; and if she was under the age of sixteen on that day, it is immaterial, so far as this case is concerned, whether the defendant had actual knowledge of it or not.

It is equally immaterial, gentlemen, so far as this case is concerned, except upon the question of this girl's credibility, whether she was or was not, prior to the 13th day of April last, a person of unchaste character. Under this statute, it is just as much a crime to take a female of previous unchaste character, under the age of sixteen years, either for the purpose of prostitution, or for the purpose of sexual intercourse; and, under this statute, it is also immaterial whether the girl was taken ror either of those purposes, with or without the consent of her parents, or of the person having legal custody of her person. The object of the statute is very apparent. The legislature intended to protect females, under the age of sixteen years, from prostitution, or from lending themselves for purposes of sexual intercourse. That is clearly the intention of the legislature, and it is equally clear that the legislature intended to punish, and does punish, as a crime, any person who violates, employs, harbors or uses a female under the age of sixteen, either for the

purpose of prostitution, or for the purpose of sexual intercourse. That is the law of this State; and it is your duty, if the evidence in this case clearly satisfies you, beyond all reasonable doubt, that this defendant has violated the provisions of this statute, to say so.

There are two questions in this case which you will be called upon to respond to, and, as you respond to those questions, you will have to determine the question of the guilt or innocence of the defendant.

*First.* Did this defendant, on the 13th day of April last, receive, harbor and use this girl, Hulda Wissler, for the purpose of sexual intercourse? If you answer that question, upon the evidence in the case, in the affirmative, the next question will be:

*Second.* Was she a female, at that time, under the age of sixteen years?

It is conceded in this case, and proved, that the defendant was not. at that time, the husband of the said Hulda Wissler. So that third question, which would otherwise arise in this case, does not do so, because the fact is conceded. Therefore, if you answer both of those questions in the affirmative, this defendant is guilty under this indictment.

The evidence is necessarily disgusting, and much of it has emanated from witnesses of impure and unchaste character. I allude to the testimony of the complainant herself, and the testimony of Kitty Campbell. There can be no question in this case that both of them are girls of unchaste character. Their demeanor on the stand, and their language, all indicate that that is so; and, notwithstanding that fact, if this girl was under the age of sixteen years, and the defendant took, harbored, received or used her for the purpose of prostitution or sexual intercourse, he is just as guilty as though she had been one of the most virtuous girls.

The law very properly provides, in cases of this character (*Penal Code*, § 283), that no conviction can be had upon the testimony of the female abducted, compelled or defiled, unsupported by other evidence. The meaning of that section of the statute is, if her evidence—I mean the evidence of Hulda Wiss-

ler—stood alone and unsupported by other evidence, you could not convict this defendant under this indictment. The law requires that her evidence should be supported by the evidence of other witnesses. It does not necessarily follow that the law requires that the supporting evidence must emanate from persons of previously chaste or unspotted character; but the law does require that the testimony of this girl must be supported, in every material particular, by evidence that is satisfactory to the jury.

Now, did this defendant, on the 13th day of April last, take, receive, harbor or use this girl, for the purpose of sexual intercourse? Both the complainant and the defendant substantially agree as to the manner in which they met for the first time. He was within a few feet of the house in which the girl resided with her mother. She was standing either by or in the hallway leading into the house in which she resided. She was crying, and by that means undoubtedly attracted the attention of this defendant, because he admits that she did. She told him, in answer to his questions, what she was crying for. She said she had lost two dollars and two cents, wages that she had earned, and that she was crying in consequence of the loss, and because of the fear of threatened violence on the part of her mother, if she went home without this money. That is, substantially, her statement, and that is, in substance, what this defendant says took place. According to his statement, he offered her eighty cents at that time, all the money he then had in his possession. Her statement differs with his, in that respect; but, by his invitation, the girl accompanied him to a railroad car, got upon the car with him, and was taken to Twenty-third street. They then proceeded together along Twenty-third street, until the defendant took her to his room on the third floor.

Now, up to that point, they both substantially agree. She says that, on that occasion, when he got her into the room, he took improper liberties with her, which it is unnecessary for me to repeat, but which, if true, would indicate clearly a desire on his part to have an act of sexual intercourse with her on that occasion. He denies that. He says that he took her there, not

for that purpose, but merely for the purpose of relieving her by giving her a couple of dollars, the amount which she claimed to have lost; and he denies in the most positive terms that he did or said anything that would indicate a desire on his part to do otherwise than to relieve her necessities, at that time, in respect to this money that she claimed to have lost.

Now, gentlemen, there were other meetings between the parties subsequent to this one, in this room or in the streets; and there seems to be very little conflict—so far as the meetings, and where they took place, are concerned—between this defendant and the complainant. If that is so, then there is some evidence tending to a certain extent, and you are to judge what the extent is, to corroborate the complainant, which evidence emanates from the defendant himself. She tells you that, subsequent to the first visit to this room, and when she was accompanied by Kitty Campbell, the defendant did actually have an act of sexual intercourse with her.

There is a conflict in the evidence between her evidence and the evidence of the girl Campbell, and a very material conflict. She tells you that Kitty Campbell held her by force, whilst the defendant accomplished his purpose in having an act of sexual intercourse with her. She tells you, also, that that was immediately after he had an act of sexual intercourse with Kitty Campbell. Kitty Campbell, on the other hand, tells you that there was no force used, but, on the contrary, that this girl submitted to this act; that she undressed herself, and that she did it in consideration of money, which was there and then handed to her by this defendant. The defendant denies that he had any act of sexual intercourse with either of them, or that he attempted to have any act of sexual intercourse with them, or either of them. Well, whether he did or did not, if he took this girl there for that purpose, it is immaterial whether he did or did not.

It will be for you, gentlemen, to determine whether this defendant, denying this statement, denying those facts, if they be facts, on the one side, and those two girls on the other side, stating the facts, if they be facts, in a different way; it will be for you to decide which of them is entitled to credence in this

case. Upon this question you have a right to take into consideration the testimony of Dr. Simpson, bearing upon this question, and give to it such weight as you think it is justly and properly entitled. She is a physician, a graduate of a regular medical college, and authorized to practice her profession. She made an examination of the person of this girl, Hulda Wissler. She detailed to you what that examination was, and its results, if her testimony is true, and is of that character which convinces you that it is correct, you have the right to take it into consideration in connection with the other evidence in this case, for the purpose of satisfying yourselves as to whether an act of sexual intercourse took place between this girl and this defendant.

That those girls were in the room with this man, or in the neighborhood of that room, has not only been testified to by them and the defendant—and they substantially agree about the number of days that they were there, though they differ as to the precise days—but it has been also testified to by other witnesses. As to the number of visits if not the days, those girls have been corroborated by every other witness called—the house-keeper, the chambermaid, and the other two women who were called by the defendant. It is not necessary in this case that any witness should be actually present and see the act of sexual intercourse, because, if that were so, in ninety-nine cases out of a hundred, there would be no corroborating evidence. This is the rule which you will follow. People *v.* Platt, 4 *N. Y. Crim.* 53; 100 *N. Y.* 590. "It is not indispensable that such corroboration should be furnished by positive and direct evidence. But proof of circumstances, legitimately tending to establish the existence of the material facts, will be sufficient to authorize a conviction. In one form or the other, however, proof must be given, aside from that of the female, tending to establish the commission of a crime, and that it was perpetrated by the person accused, before a conviction can be lawfully had."

Therefore, gentlemen, in this case, taking all of the evidence together bearing upon this point, if the evidence as to whether an act of sexual intercourse did or did not take place between

the complainant and the defendant, satisfies you that such an act did take place, and that the evidence fairly and reasonably points to that fact, if it be a fact, then you have a right to take that class of evidence into consideration, and to determine whether or not such an act as is charged here did take place between those two persons. It is impossible, in a great number of cases, to furnish direct and positive evidence of the commission of any such acts. Your own good common sense will teach you that. Now, was this girl corroborated, or rather, is her testimony supported by other evidence? Is it supported to the extent which satisfies you that, taking her evidence and the supporting evidence together, the crime charged in this indictment has been made out, beyond a reasonable doubt? If that is so, your duty is to convict the defendant.

Now, what is the defense in this case?

Before proceeding to call your attention to that, it is proper for me to tell you that, before the prisoner is called upon to make a defense, the prosecution are bound to make out a case against him, beyond all reasonable doubt.

The defendant denies this charge. He says that his motive in meeting this girl was a pure one, that he was actuated by a charitable design to aid her, looking upon her as a girl who had been cruelly and unjustly treated by her mother. That was, he says, the motive which induced him to act as he says he acted in this case. Was that his motive, gentlemen? You have a right to take into consideration all of the evidence, his own evidence included, the letter which he wrote to, and intended for this girl, and you wish to draw your own conclusion as to what his motive was. If the evidence satisfies you that his motive was that which he says it was, a purely charitable motive, then, gentlemen, that would dispose of this case in his favor, although he happened to get this girl into that house; because, in that case, his motive would be a good one, and he did not bring her there for improper purposes. Although he may be guilty of conduct which was injudicious, and which was not what a sensible, discreet man, under the circumstances would have done, he committed no criminal act. But if his

motive was to get this girl into that room for the purpose of sexual intercourse, and if, in pursuance of that motive, he did get her into that room, and there either had sexual intercourse with her, or had not, if his motive and intention was to have sexual intercourse with her and she was under the age of sixteen years at the time, he is guilty of this offense.

This defendant is charged with the commission of a serious criminal offense. Although his evidence is to be taken and weighed and considered by you in the same way as you would the testimony of any other witness; still, where his evidence conflicts with that of other witnesses as it does, you have the right, for the purpose of enabling you to determine his credibility, to take into consideration that fact and it will be for you to say whether a desire to relieve himself of a charge of this character would furnish a sufficient inducement for him to testify falsely in respect to any material ·fact. So, also, in the case of the complainant and of Kitty Campbell. It is your duty to take into consideration the character that they themselves have disclosed, by their own evidence in this case, and consider it, in determining the question of their credibility.

Now, gentlemen, I have been requested to charge a number of propositions, some of which I will charge and some I will decline to charge, giving Mr. Howe's client the benefit of an exception to my refusal to charge as I have been requested.

Mr. Howe has asked me to charge you as follows:

"That the jury should take into consideration, on the question of her credibility, that the girl has testified that the defendant attempted to commit the crime of rape upon her, and that she thereafter took two dollars from the table in the room, and went through the public streets meeting many people and disclosed to no one the alleged outrage; and that also she, knowing the nature of the crime which the defendant, as she says, then attempted to commit, consented and did meet the defendant two days thereafter of her own volition."

That you have the right, gentlemen, to take into consideration upon the question of her credibility, if those are the facts. But you must remember that this is not a prosecution for rape. If it was, it must necessarily fall to the ground. This man is

not charged with the commission of the crime of rape, and the evidence required to sustain a charge of that character is not necessary for the purpose of sustaining this charge.

The defendant's counsel has also requested me to charge as follows:

"That the jury should consider that the girl Hulda testified that she cried in the street, and wilfully told the defendant a lie as to some alleged lost money; and that the jury must take that fact into consideration in estimating the credibility to be attached to her testimony. The jury must consider the wilful falsehood by her admitted to have been designedly perpetrated, and if they believe that she wilfully lied for a designing purpose, they may reject her entire testimony."

I charge that, with this modification: That if you believe that this girl, Hulda Wissler, wilfully and corruptly testified falsely, in respect to any material matter in this case, you have the right to disregard her testimony; and the same rule applies, gentlemen, to each and every other witness in this case.

I have also been requested to charge as follows:

"That, in determining the case, the jury must consider all the testimony of the girl Hulda, as to the probabilities or improbabilities of the act of sexual intercourse by her said to have been committed; and in this respect the jury must take into consideration the circumstances of the time, the place, the surroundings, the number of people in the house at the time, and the fact that the girl failed to disclose to any one the first alleged outrage; but took the two dollars from the table, regarding the value of the money more than the alleged offense of sexual intercourse. Also the fact that Kitty Campbell contradicts Hulda as to holding her whilst the defendant ravished her, and also as to the order and manner in which the alleged intercouse was had with the two girls."

I have already told you, gentlemen, that you have the right to take all of those facts into consideration, in determining the question of the credibility of those witnesses, and also upon the question of whether this act of sexual intercourse was or was not perpetrated by the defendant.

I have also been requested to charge as follows:

" That, upon the entire case, if the jury have a reasonable doubt whether the prisoner took, or harbored, or used, or received the girl for the purpose of sexual intercourse, they should acquit him." ·

I charge you, generally, in addition to that what I have already said, I believe that you must be satisfied of this man's guilt, from the evidence in this case, beyond all reasonble doubt, before you can convict. A reasonable doubt differs from an imaginary, unsubstantial doubt. It is such a doubt as honest, conscientious, pains-taking men may entertain upon a state of facts presented to them; and if, after looking into all of the evidence in this case, and all of the surrounding facts and circumstances connected with it, you can conscientiously say that you do entertain a reasonable doubt, that is the doubt which, if it exist, the prisoner is entitled to the benefit of.

I have been requested to charge you as follows:

" That the jury must consider the evidence tending to show the good character of the prisoner, and that the same is of value not only in doubtful cases, but also when the testimony tends strongly to establish the guilt of the accused; that if the jury find that the good character of the defendant has been established, that it should create of itself a doubt in this case."

I decline to charge in that language. I prefer to charge you in the language of the Court of Appeals, as follows (Remsen v. People, 43 N. Y. 9): "Evidence of good character is not only of value in doubtful cases, and in the prosecution of minor offenses, but is entitled to be considered when the crime charged is atrocious, and also when the evidence tends strongly to establish the guilt of the accused."

In connection with that, gentlemen, of course you will consider the fact that all men, at some time in their lives, are men of good character, and it does not follow that men of good character never commit criminal offences. All are men of good character until they violate some law, either human or divine, and men who have borne excellent characters, and have stood high in the community in which they lived, we all know, have been convicted, and properly so, of the most atrocious criminal acts. You should take into consideration, in this case, the evidence

this defendant has given of his previous good character, and give it just such weight as you think it justly and properly entitled to.

I look upon this case, gentlemen, as I have no doubt you do, as an important one—one that should be carefully considered, as I have no doubt it will be. If the evidence satisfies you, beyond all reasonable doubt, that the defendant is guilty of the crime charged in this indictment, in my judgment he has committed an offense which should bring down upon him the severest punishment which the law can inflict. A man of his age, his experience, the father of a family, if he did commit this crime, I believe, in the estimation of every decent man, merits the severest punishment known to the law. On the other hand, if this is a conspiracy, as he claims it is, gotten up for the purpose of blackmailing him, or extorting money or property, or for any other improper purpose, he only acting indiscreetly in respect to those girls, then he is clearly entitled to the sympathy of every honest man.

I have said, gentlemen, all that is necessary for me to say, I believe, in instructing you as to what the law is. The law you must take from me without question. The facts you are to dispose of without being influenced in any way by any opinion of mine, if I have expressed any opinion on the question of the guilt or innocence of the defendant.

The jury rendered a verdict of " guilty," and the court sentenced the prisoner to imprisonment in the State prison for two years and six months.